**2016 BNH 009**        Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                          Bk. No. 14-11021-BAH
                                                                                                Chapter 7
Catco Recycling, LLC,
        Debtor

Michael S. Askenaizer,
Chapter 7 Trustee,
        Plaintiff

v.                                                                                              Adv. No. 15-1022-BAH

Recore Trading Company, LLC,
        Defendant

*Clifford Gallant, Jr., Esq.*
*Beliveau, Fradette, Doyle & Gallant, PA*
*Manchester, New Hampshire*
*Attorney for Plaintiff*

*Matthew R. Johnson, Esq.*
*Devine, Millimet and Branch, P.A.*
*Manchester, New Hampshire*
*Attorney for Defendant*

## MEMORANDUM OPINION

### I.  INTRODUCTION

      Michael S. Askenaizer, the chapter 7 trustee (the "Trustee") of the bankruptcy estate of Catco Recycling, LLC ("Catco" or the "Debtor"), filed a two-count complaint against Recore Trading Company, LLC ("Recore") (Doc. No. 1) (the "Complaint").  At issue in this case is whether Recore owed money to the Debtor on the petition date that is property of the estate and must be turned over to the Trustee.  The Court conducted a trial of this matter on June 14, 2016,

and took the matter under advisement.  This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

**II.  FACTS**

In 2005, Donald Belisle III ("Belisle III") formed the Debtor, a business that recycled catalytic converters, other metals, and scrap produced by salvage yards.  Belisle III's father, Donald Belisle ("Belisle"), owns a similar company, Recore, but it operates on a much larger scale.  In the spring of 2013, Belisle III approached his father to see if Recore would be interested in purchasing Catco's assets as Belisle III indicated that his company was in financial trouble and would be going out of business.  Belisle III wanted $250,000.00 for Catco's assets, but Belisle agreed that Recore would pay only $150,000.00.  On July 12, 2013, Belisle III, the sole member of the Debtor, and Belisle, the sole member of Recore, executed a document titled "Preliminary Purchase And Sale Agreement" (the "P&S Agreement"), which states in its entirety:

> Preliminary Purchase And Sale Agreement
>
> Seller Donald Belisle III (Catco Recycling)
>
> Buyer Recore Trading Co LLC.
>
> Seller agrees to sell all assets of "Catco Recycling" To Buyer including but not limited to Peterbilt dump truck, Isuzu box truck, Nissan fork lift, Baler, Cat shear, wire stripper misc containers and shelving, customer lists, company name and rights. Buyer agrees to pay seller $150,000.00 total with $50,000.00 due at signing, $50,000.00 due in 60 days and the balance of $50,000.00 due in 120 days. This agreement is preliminary and will be superseded by final agreement when it is prepared by buyers attorney.
>
> Seller [signature]          Donald BelisleIII
> Buyer [signature]           Donald Belisle

The P&S Agreement was drafted by Belisle, who testified that this agreement was only preliminary and was to be superseded by legal documents to be drafted by his attorney. While other documents were drafted by Recore's attorney after July 12, 2013 (including documents that would have required Belisle III to cease operating Catco and work exclusively for Recore), they were never signed. The reason why those documents were never signed was not clear from the record as the testimony of Belisle and Belisle III conflicted on this point. The parties do not dispute, however, that the P&S Agreement is the only document memorializing the sale that was executed by both Recore and the Debtor. The P&S Agreement does not contain any provision indicating that Recore was buying or assuming Catco's liabilities as part of the transaction.

Belisle testified that the most important asset being purchased by Recore was Catco's customer list, which in the parties' business really means suppliers, i.e., companies that could

3

supply Catco and Recore with product to be recycled. Belisle III testified that the equipment was the primary asset being sold.

Pursuant to the terms of the P&S Agreement, Recore issued and delivered to Belisle III the first $50,000.00 payment due under the P&S Agreement on July 12, 2013. The check was made payable to Belisle III, instead of the Debtor, at Belisle III's request.[1] Recore described this payment as "goodwill" in its financial records.

On or about the date the P&S Agreement was executed, Belisle III also became a full time employee of Recore. Belisle III and his father had agreed that Belisle would come work for Recore and bring Catco's customers/suppliers with him. Belisle testified that this was the most important part of the deal to him. Belisle III testified that he was paid $2,000.00 per week in salary as a Recore employee, with $1,000.00 being paid through Recore's payroll account and the second $1,000.00 being paid through Recore's operating account, in order to keep from Recore's longtime general manager the fact that Belisle III was receiving a higher wage than he was. Recore's records show that only the $1,000.00 payments from the payroll account were subject to tax withholdings; these checks from the payroll account were in the net amount of $844.68.[2] They were categorized by Recore as "payroll expenses" in its financial records.

Belisle testified that Belisle III was paid $1,000.00 per week in salary and an extra $1,000.00 per week because, during the first week of his employment, Belisle III requested additional monies so that he could pay his bills. Belisle testified that the second $1,000.00 per week payment was to be deducted from the final installment due under the P&S Agreement, i.e., they were to be treated like an advance. Like the initial $50,000.00 installment payment, these

---

[1] Recore made the checks payable to Belisle III instead of Catco because Belisle III informed Belisle that Catco no longer had a bank account.

[2] Belisle III received fifteen payroll checks while employed by Recore, each in the amount of $844.68. They were dated August 2, 9, 16, 23, 30, September 6, 13, 27, October 3, 7, 11, 18, 25, and November 1, 8.

separate $1,000.00 per week payments were described as "goodwill" in Recore's financial records and not as "payroll expenses."[3]

At trial, Belisle III disputed Belisle's contention that the second $1,000.00 payments were not salary. He stated his expenses could not be covered by weekly wages of $1,000.00, as his child support payments were $320.00 per week and his mortgage was $3,500.00 per month, or roughly $807.00 per week. However, this assertion is consistent with Belisle's testimony that Belisle III needed additional funds in order to meet his expenses.

Recore suggested at trial that Belisle III continued to operate Catco after the execution of the P&S Agreement. Recore offered a transaction spreadsheet from Rebuilders Automotive Supply Co. ("RAS") that shows multiple transactions between Catco and RAS during July and August. Belisle III testified that the transactions shown on RAS's spreadsheet during this time period reflect only payments for material that was purchased or delivered before the execution of the P&S Agreement. Belisle disputes Belisle III's explanation and contends that the spreadsheets instead show additional "advances" to Catco and not simply "final payments."

Between September 13 and 17, 2013, Recore issued three more checks made payable to Belisle III, which together totaled $50,000.00. These checks represented the second $50,000.00 installment due from Recore to Catco under the P&S Agreement. In its financial records, Recore again described these payments as "goodwill."

In November 2013, while attending an out-of-state trade show, Belisle met a representative of RAS, who informed Belisle that Catco owed his company $75,000.00. The representative further informed Belisle that RAS was aware of the asset sale between Catco and Recore. He indicated that Recore was liable for this debt, and he threatened Recore with legal

---

[3] Belisle III received fifteen operating account checks during the time he worked at Recore, each in the amount of $1,000.00. They were dated August 2, 16, 23, 23, 30, September 6, 13, 20, 27, October 4, 11, 18, 25, and November 1, 8. These dates correspond closely (but not exactly) with the dates of the payroll checks.

5

action.  Belisle testified that he was shown some documentation from RAS at the trade show that caused him to believe that the assets he purchased from Catco had potential liens on them. Belisle stated he never would have purchased the assets from Catco if the assets were encumbered with liens.

On June 18, 2013, prior to Catco and Recore executing the P&S Agreement, Catco executed an advance agreement and a promissory note in the amount of $75,000.00 pursuant to which RAS would advance money to Catco to purchase inventory and Catco would be liable to RAS for the amounts advanced.  The advance agreement called for the execution of a security agreement.  Unlike the advance agreement and accompanying note, the security agreement is dated a month later, on July 18, 2013, after the P&S Agreement was signed.  The security agreement granted a continuing security interest in "all tangible and intangible personal property of the Debtor . . . in which the Debtor may now have or hereafter acquire an interest."

After learning this information, and believing that RAS held a valid lien on the assets Recore purchased from Catco and that Recore could potentially be liable for the money Catco owed RAS, Belisle contacted his son via telephone from the convention.  Belisle informed Belisle III that Recore would be withholding the remaining payment due under the P&S Agreement, which was due on November 9, 2013, until the matter with RAS was resolved. Following this telephone conversation, Belisle III immediately left Recore's employ and never returned.  Belisle III testified that his father also told him during their conversation that he would be withholding payment of his wages as well; Belisle denied that and said he would have paid Belisle III for his work if he had remained with the company.

Recore did not make the third installment payment when due on November 9, 2013. Shortly thereafter, Recore received a letter dated November 19, 2013, from counsel for RAS, which asserted that as a result of Recore's purchase of "the entire business of Catco," Recore

6

was liable as a corporate successor for Catco's debts. RAS informed Recore that it was owed $77,116.67 and demanded payment by November 22, 2013. RAS further informed Recore that it was prepared to file suit against it and included with the letter a copy of a draft complaint. Neither the letter nor the draft complaint alleged that RAS held a security interest in the assets Recore had acquired from Catco.

Belisle had his then attorney look into the matter. He advised Belisle in December 2013 that, even though RAS had a signed security agreement, RAS had failed to take steps to perfect its lien. Recore's attorney advised RAS that if it pursued the matter, Recore would take legal action against RAS. Recore never paid RAS, and RAS never filed suit against Recore.

Despite the issue with RAS having been resolved, Recore did not proceed to remit payment of the final $50,000.00 installment to Catco. When questioned at trial as to why Recore failed to make the third payment, Belisle responded that while the lien issue may be been resolved, the employment and customer/supplier issues were not: Belisle III was no longer working for Recore and Recore no longer had Catco's customers/suppliers, as his son had contacted them after he left Recore and they had re-established their relationship with Catco, who was competing against Recore. In support of this contention, Belisle testified that he received information from Schnitzer Steel Industries, Inc. that Belisle III was selling product as of November 22, 2013, as reflected in a transaction ticket he obtained from Belisle's brother, who worked for that company; the ticket indicated that the company had purchased product from Catco on that date. Belisle III denied that he was involved in that transaction. Belisle contends that Belisle III immediately started competing with Recore, running the same business Catco ran prior to the execution of the P&S Agreement; however, Belisle III did not file a certificate of formation for his new company, Catco Auto Core, LLC ("Catco Auto Core") with the New Hampshire Secretary of State until January 17, 2014. Belisle testified that he did not get back

7

into recycling immediately after the November 2013 conversation with his father because he was still recovering from surgery.

At trial, Belisle III admitted that after he left Recore, he did work with some of the same customers/suppliers that he worked with prior to Recore's purchase of Catco's assets. Belisle III also admitted at trial that he tried to take back one of the assets sold to Recore, namely, a Peterbilt truck, which he claims was the most valuable asset Catco sold to Recore. Belisle III contacted a towing company in an attempt to repossess the truck, even though neither he nor Catco had legal authority to do so. Belisle III testified that he took such action because his father owed him $50,000.00 and he wanted his equipment back.

Belisle testified that he paid Catco for much more than Recore received. While he paid more than $100,000.00 for Catco's customer/supplier list and its business, what he ended up with was some "garbage equipment" and lots of legal bills.

On January 13, 2014, Belisle filed a domestic violence petition against Belisle III in state court as Belisle III had threatened him with physical harm, showing up at his house with a gun. The petition was completed and executed under oath and included the following statement:

> In August of 2013 I agreed to buy my sons [sic] failing business from him and hire him to work for me. The deal fell apart in November when I discovered that the assets of the business that I agreed to purchase had been used as collateral for my son to secure an advance in the amount of $75,000.00. I confronted my son with my concerns that the company he owed the money to was now taking legal action against me for the $75,000.00 plus court costs. I told my son that I was going to hold back the final payment to him until the lien issue was resolved ($50,000.-).

Belisle stated that he was not assisted by counsel when he prepared the petition and did not intend to set forth a complete description of all the issues between him, his son, and their companies. Belisle testified at trial that he wrote the information in the petition in an attempt to explain to the court his son's mindset and why he thought his son was threatening him, i.e., Belisle III thought Recore owed him $50,000.00. Belisle stated that he was not considering

8

Recore's legal rights and obligations at the time but rather was seeking protection for himself and his family.

On May 20, 2014, the Debtor filed a chapter 7 bankruptcy petition. The Debtor included with its Statement of Financial Affairs the following itemization of the assets sold to Recore:

**LIST OF ITEMS SOLD TO DON BELISLE III'S FATHER'S COMPANY RECORE TRADING CO., LLC**

**PER JULY 12, 2013 BILL OF SALE FOR $150,000.00, $100,000.00 OF WHICH WAS RECEIVED**

| ITEM | EST. VALUE | 2013 RETURN VAL |
|---|---|---|
| 2001 PETERBILT DUMP TRUCK (new $12$^{th}$ body) | $50,000.00 | $21,099.00 |
| 2005 ISUZU BOX TRUCK | $12,000.00 | NOT LISTED |
| NISSAN FORK LIFT | $18,000.00 | $ 4,719.00 |
| BAILER | $ 6,000.00 | $ 4,443.00 |
| CAT SHEAR | $30,000.00 | $18,000.00 |
| WIRE STRIPPER | $ 1,500.00 | $ 5,000.00 (for equip) |
| 11 SECCO BINS ($1,500 EACH) | $16,500.00 | " |
| 10 WIRE BINS ($200 EACH) | $ 2,000.00 | " |
| 20 BLACK BINS ($75 EACH) | $ 1,500.00 | " |
| COMPUTERS AND SECURITY EQUIPMENT | $ 2,000.00 | $    837.50 |
| FURNITURE | $ 1,500.00 | $    494.00 |
| TRAILER | $ 3,500.00 | $ 2,015.00 |
| CUSTOMER LISTS | | NOT LISTED |
| COMPANY NAME AND RIGHTS | | NOT LISTED |

Based on this itemization, the Debtor estimated that the value of the items transferred totaled $144,500.00, not including the customer lists and the company name and rights. Belisle testified that it was principally the customer list that justified the $150,000.00 purchase price, not the equipment. Belisle III disagreed.

9

Belisle III filed his own chapter 13 bankruptcy case on May 20, 2014 (Bk. No. 14-11022-BAH).  In Belisle III's Statement of Financial Affairs, Belisle III indicated he received $15,000.00 from Recore in 2013, which amount was listed in response to Item 1, under the category of "Income from employment or operation of business."  This $15,000.00 matches the amount paid from Recore's payroll account to Belisle III and does not appear to include the extra $1,000.00 per week payments made from Recore's operating account, which Belisle III contends were also wages.  Belisle III admitted at trial that the total net amount he claims he was paid as wages by Recore in 2013, was $27,670.20, not $15,000.00 as he indicated under oath in his personal bankruptcy filing.

After Catco filed bankruptcy, the Trustee sought to recover $50,000.00 from Recore on account of the final installment that was due under the P&S Agreement.  When Recore failed and refused to remit the payment, the Trustee filed this adversary proceeding.

### III. DISCUSSION

The Trustee's complaint contains two counts.  In Count I, the Trustee seeks the turnover of $50,000.00 pursuant to 11 U.S.C. § 542.  In Count II, the Trustee seeks the disallowance of any claim by Recore against the Trustee and/or the estate pursuant to 11 U.S.C. § 502(d).

**A.  Count I – Request for Turnover of Property of the Estate – 11 U.S.C. § 542(b)**

Section 542(b) of the Bankruptcy Code provides in relevant part:

> [A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 or this title against a claim against the debtor.

11 U.S.C. § 542(b).  "Section 542(b) creates an action for turnover of matured debts owed to a bankrupt estate."  Nat'l Enters., Inc. v. Koger P'ship, Ltd. (In re Nat'l Enters., Inc.), 128 B.R.

956, 959 (E.D. Va. 1991).  "[A] debt may be both mature for purposes of this provision and nonetheless disputed by the defendant."  Id. (citing In re Willington Convalescent Home, Inc., 850 F.2d 50, 52 n.2 (2d Cir. 1988)).

In this case, the P&S Agreement required Recore to make a third and final $50,000.00 installment payment to Catco on November 9, 2013.  As of the date of the Debtor's bankruptcy filing on May 20, 2014, Recore had not issued the $50,000.00 payment.  Recore defends its failure to make the final payment, and to turn over the same to the Trustee after he made demand, on the grounds that Belisle III materially breached the parties' agreement:  (1) prior to the execution of the P&S Agreement by failing to disclose Catco's obligation to RAS; (2) during the performance of the P&S Agreement by continuing to conduct business with RAS after the execution of the P&S Agreement; and (3) after Belisle III left his employment by taking back the business purchased by Recore.  Recore contends that Belisle III's material breaches discharged any remaining obligations of Recore under the P&S Agreement.  Alternatively, Recore argues that the maximum amount Recore would have owed Catco, if its payment obligation were not discharged, is $35,000.00 as Recore made payments totaling $15,000.00 to Belisle III that were to be credited toward the final $50,000.00 installment.

The Trustee denies that Recore's payment obligation has been discharged.  He states that the defenses to payment advanced by Recore are simply without merit.  He contends further that Belisle admitted and acknowledged in his domestic violence petition that, as of January 13, 2014, Recore owed Catco $50,000.00.

### 1. Breach of Contract in New Hampshire

Under New Hampshire law, the question of whether there has been a breach of contract is one for a trier of fact "to determine from the facts and circumstances of the case."  Fitz v. Coutinho, 136 N.H. 721, 725 (1993) (citing Sawin v. Carr, 114 N.H. 462, 466 (1974);

11

Restatement (Second) of Contracts § 241 & comment a at 237 (1981)).  "[F]or a breach of contract to be material, it must go to the root or essence of the agreement between the parties, or be one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract."  Ellis v. Candia Trailers & Snow Equip., 164 N.H. 457, 467 (2012) (quoted in Foundation for Seacoast Health v. Hospital Corp. of Am., 165 N.H. 168, 182-83 (2013)).  A breach is material if:

1. A party fails to perform a substantial part of the contract or one or more of its essential terms or conditions;

2. The breach substantially defeats the contract's purpose; or

3. The breach is such that upon a reasonable interpretation of the contract, the parties considered the breach as vital to the existence of the contract.

Foundation for Seacoast Health, 165 N.H. at 182 (quoting Ellis, 164 N.H. at 467).  If a breach causes no damages or prejudice to the other party, it may be deemed not material.  Foundation for Seacoast Health, 165 N.H. at 182 (citations omitted).  The New Hampshire Supreme Court has further held that "[o]ne who is himself guilty of a wrong for breach of contract should not seek to hold his counter-promisor liable."  Laconia Clinic, Inc. v. Cullen, 119 N.H. 804, 807 (1979) (citing Farrelly v. Timberlane Reg'l School Dist., 114 N.H. 560, 566-67 (1974)).  However, "[n]ot every breach of duty by one party to a contract discharges the duty of performance of the other.  Only a breach that is sufficiently material and important to justify ending the whole transaction is a total breach that discharges the injured party's duties."  Fitz, 136 N.H. at 724-25 (1993) (citations omitted).

Here, Recore contends that Catco breached its contract with Recore, i.e., the P&S Agreement, in three ways, and therefore the Trustee (who now stands in Catco's shoes with respect to the P&S Agreement) cannot hold Recore liable under the P&S Agreement for the final installment payment.

12

### a. Material Breach Prior to Execution of the P&S Agreement

Recore contends that because Catco failed to disclose the existence of its indebtedness to RAS before the execution of the P&S Agreement, Catco somehow breached the parties' agreement. Recore has not articulated how this non-disclosure could cause a breach of a <u>subsequently</u> executed agreement, which Recore never sought to rescind. Perhaps more likely, Recore is really contending that it never would have entered into the P&S Agreement had it known that Catco owed RAS $75,000.00. As the Trustee points out, however, the P&S Agreement is silent as to the responsibility for Catco's liabilities and the agreements drafted by Recore's counsel, after the P&S Agreement was executed, make clear that Recore was not assuming any liabilities of Catco. Thus, it is unclear to the Court how knowledge of the RAS indebtedness would have affected Recore's decision to enter into the P&S Agreement. Further, Belisle himself testified that he was aware that Catco was in financial trouble; after all, that is the reason that Belisle III approached him about purchasing Catco's assets. The fact that Catco's debt to RAS, <u>in particular</u>, constituted part of Catco's financial difficulties seems unimportant where Recore did not agree to assume Catco's liabilities and RAS's debt was unsecured (or, at best, secured by an unperfected security interest which RAS never sought to enforce). Catco's failure to disclose the RAS debt was not a "material breach" of the subsequently executed P&S Agreement such that Recore's performance under the P&S Agreement can be excused.

### b. Material Breach During Performance of the P&S Agreement

Without much elaboration, Recore argues that Catco breached the P&S Agreement during the performance of the P&S Agreement by continuing to conduct business with RAS after the execution of the agreement. Belisle offered a transaction spreadsheet from RAS that shows eight transactions between Catco and RAS between July 17, 2013, and August 12, 2013. Belisle

III testified that the transactions shown on RAS's spreadsheet during this time period reflect only payments for product that was purchased before the execution of the P&S Agreement.

A close review of the spreadsheet shows that seven of the eight transactions were described as "final" payments, i.e., the balance that was due to Catco after the order was delivered.[4]  The eighth transaction, dated July 19, 2013, is marked as an "advance" payment on the spreadsheet, i.e., monies that were advanced to purchase product.  Further examination of the spreadsheet reveals that this payment relates to "PO #10."  The first entry in the transaction log related to "PO #10" is dated July 1, 2013; accordingly, this eighth transaction also relates to a purchase that was initiated <u>before</u> the P&S Agreement was executed.  The record does not support a finding that Catco continued to perform work after July 19, 2013.[5]  For that reason, the Court cannot conclude that Catco materially breached the P&S Agreement during the performance of the agreement as Recore contends.

### c. Material Breach After Belisle III Left Recore's Employ

Recore contends that Belisle III's conduct after Belisle III left Recore's employ constitutes a material breach of the P&S Agreement that discharged Recore's duty to issue the final payment.  Recore argues that it should not be required to turn over to the Trustee the remaining amount owed Catco due to the breach.  Recore complains that, after it withheld the final installment, Belisle III quit, went back into business, and took back the customers/suppliers that Recore had purchased from Catco, when instead Belisle III should have assisted it in resolving the issue with RAS.

---

[4] As Belisle III explained at trial, only partial payments were made on the date the materials were actually delivered.  After delivery, the parties would have to figure out exactly how much precious metals were in each load of materials that was delivered.

[5] The Court noes further that the P&S Agreement does not even contain an explicit provision that Catco cease doing business.  The Court acknowledges, however, that the P&S Agreement did include "customer lists" and "company name and rights," which, by implication, suggests that Catco was going out of business.

14

Belisle explains that his decision to purchase Catco's assets for $150,000.00 was for the purpose of obtaining Catco's customers/suppliers and having his son work for him. He placed very little value on the equipment and other items he received as part of the sale. In his view, without the customers/suppliers, there no longer was any value to the purchase of Catco for which Recore had already paid $115,000.00.

Although Belisle takes the position that his son's employment at Recore was an important part of the deal with Catco, the P&S Agreement made no mention that Belisle III's employment was part of the purchase price. In addition, and as the Trustee has noted, Belisle III never executed any type of non-solicitation or non-competition agreement. Further, Belisle acknowledged during the trial that Recore received all that was called for in the P&S Agreement. For those reasons, the Court is unable to conclude that Catco breached the P&S Agreement. Even if the non-solicitation of Catco's customers/suppliers and non-competition by Belisle IIII were part of the transaction between Recore and Catco, Recore fails to acknowledge that by the time Belisle III left Recore and resumed his recycling business with many of the same customers/suppliers, Recore had already materially breached the agreement by failing to make the third installment payment, which was a vital and essential component of the contract. Recore's failure to make the payment substantially defeated the contract's purpose. While Recore states that it did not receive the benefit of its bargain with Catco, neither did Catco. Accordingly, the Court is unable to find that Recore was excused from performing under the P&S Agreement.

### 2. Credit Against Final Installment Due Under the P&S Agreement

Recore contends that the amount of the outstanding debt is not $50,000.00 but rather $35,000.00, as the fifteen $1,000.00 payments made out of its operating account to Belisle III between August 2, 2013, and November 8, 2013, were to be deducted as a credit against the third

15

and final installment. The Trustee argues that the $15,000.00 should not be credited because the checks were made payable to Belisle III while the P&S Agreement was between Catco and Recore, not Belisle III and Recore. Further, the Trustee argues that the timing of these $1,000.00 payments, which were made both before and after the second installment was made and mostly on the same dates as the payroll checks issued, compel a finding that these payments are not attributable to Recore's purchase of Catco's assets.

After weighing the evidence, the Court finds that the $15,000.00 should be applied to the balance of the purchase price. The Trustee's argument that the checks were made payable to Belisle III, not Catco, is unavailing because <u>all</u> of Recore's checks issued in payment for its purchase of Catco's assets were made payable to Belisle III. Likewise, Belisle III's statement in his Statement of Financial Affairs that he only received $15,000.00 in income from Catco in 2013 conflicts with his admission at trial that he received $27,670.00[6] in wages from Catco during the same period, and therefore is not conclusive one way or the other. On balance, the absence of tax withholdings, and Recore's categorization of each of the fifteen $1,000.00 checks as "goodwill," support the finding that these $15,000.00 in payments were made as a credit toward the final $50,000.00 installment due under the P&S Agreement, and not as wages paid to Belisle III.

### B. Count II – Disallowance of Claim – 11 U.S.C. § 502(d)

In Count II, the Trustee seeks the disallowance of any and all claims held by Recore against the Trustee and/or the Debtor's bankruptcy estate, pursuant to 11 U.S.C. § 502(d), unless and until Recore turns over the $50,000.00 that the Trustee asserts is property of the estate. The claims register in the Debtor's bankruptcy estate reveals that Recore has not filed a proof of claim in the Debtor's bankruptcy case. The deadline to do so was September 17, 2014. Because

---

[6] $30,000.00 less payroll tax withholdings on the fifteen payments that issued from Recore's payroll account.

16

Recore has not asserted any claim against the Trustee and the Debtor's bankruptcy estate, no claim exists to disallow under § 502(d).  For that reason, Count II is denied.

## IV.  CONCLUSION

For the reasons set forth above, the Court grants Count I of the Complaint and denies Count II of the Complaint.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion that shall require Recore to turn over the reduced sum of $35,000.00 to the Trustee in accordance with the requirements of § 542(b) of the Bankruptcy Code.

ENTERED at Manchester, New Hampshire.

Date:  August 9, 2016  /s/ Bruce A. Harwood
Bruce A. Harwood
Chief Bankruptcy Judge